Is counsel here for Hockerson-Halberstadt v. Costco? Are you ready? Next case is number 06-1263, Hockerson-Halberstadt v. Costco. Mr. Warren. Please, Mr. Court. I'm going to get right into the issue with regards to the lower rim. The court erred in the claim construction concerning the lower rim, and the court defined the lower rim as the lowest edge of the border of the heel portion of the paraben-shaded midsole at the point where the heel actually touches the ground. And our contention is there's nothing in the patent, in the specifications, or in the claims, or in the prosecution history that requires that the shoe actually be touching the ground where the measurement is made to determine where the lower rim is. If we look at the prior art, which is in figures 1 and 2 of the 895 patent, you'll see that it's a paraben-shaded midsole, and what was added to it is a support band to go from the lower rim of that paraben-shaded midsole up to the heel portion. Can I show you the shoe just so you can get an idea? This was the lower rim here, and you had a support band that went up to the midspan of the heel part to support the shoe from supernating and pronating. It was a stabilizing idea. In the early 70s, there was nothing that had a support band. Is this a Costco shoe? This is a Costco shoe, but this is being shown solely to try to help understand what's going on. This is not a part of the record? Not part of the record, not part of evidence. I gather you're not objecting to our looking at this? Well, this is a precise shoe that we did object to below, and I would object if the court's going to look at it more closely. OK, well, then if it was in the record below? It was not in the record below. It was not in the record below? It's outside the relevant sales period. It's not an accused shoe as a substitute. OK, I think then set it aside, and we'll avoid further debate. OK, well, the issue concerning the lower rim was that I believe the child court error was led down an erroneous path for two reasons. One, they were relying on, and this is in the appendix 3055 and 3056 of the brief, they were relying on an argument made by Mr. Backus, who was attorney for HHI during the reexamination. Mr. Backus was arguing the distinction between a Fukioka patent and the 895 patent. And during that, he said that the Fukioka patent must have not been measured when it was touching the ground. The midsole could not have been measured when it was touching the ground. From that, it was inferred that the 895 patent had to be touching the ground. Now, that's not a clear disavowal of any limitation that could be read into the patent from the mere fact that there was a statement made to the examiner that this shoe is different. And it should be noted that the Fukioka shoe, or the Fukioka patent, did not have a midsole pyramid shape, did not have an outsole. It was a cup sole. It was a completely different type of shoe. And then the other thing, I think, that misled the court, or where the court was in error, was testimony by Mr. Watley, who was the expert witness on behalf of HHI. Mr. Watley testified at trial. He was asked a question by Costco's counsel, and the question was concerning the hypothetical based on an assumption, based on an assumption, based on an assumption. And what it was, if we're looking at the Fukioka patent, and let's assume that it doesn't have a cup sole. Let's assume that it has a midsole, and from that, let's assume that the midsole has an outsole. And from that, can you tell us where the lower rim is? And from that point, he stated where he thought the lower rim is. And where the lower rim is clearly stated, which was more narrow than what we were claiming that it is. And what we're saying the lower rim should be looked at is, it should be at the, let's see, the lower rim having opposite sides to the flare outwardly located, which lies significantly laterally beyond the lower edges of the heel cup. That's claim one of the patent. That's the specific language of the patent. And what was happening is the court took a hypothetical based on an assumption, on an assumption, on an assumption, and drew a conclusion that the lower rim was not on the actual outer edges of that pyramid-shaped midsole of the shoe. That's significant because that's going to change where the measurements is. In order for the invention to work, in order for the invention to take into consideration the prior art, you have to have a midsole with the lower rim wider than the lower edges of the midsole. And the lower edges of the midsole is where the heel cup actually sits on the midsole. It's kind of technical. It's actually pretty straightforward as far as what's happening here. Well, you say it's kind of technical. It seems to me to be almost hyper-technical. And my problem is, didn't the district court look at all of this and say, we've got some very technical claims with very minor variations, little just where the edge, what's the edge of the rim, and so on. And the court tried to adopt, as far as I can tell, what might be described as a normal, common sense, practical interpretation of what these terms really were intended to do. In other words, it's hard for me to say, reading the district court's opinion and claim construction, that the district court was just off the wall on this. I don't think they were off the wall. I think they were misled in the sense that we're reading a limitation into the patent that doesn't exist if we say that the lower rim is any place other than the midsole. And if you're saying the shoe has to rest on the surface, then we're saying that the lower rim is the outsole. And what that would do, then, is place a limitation into the patent that's not there. The only viable argument to get it in there would be through the prosecution history, saying that somehow HHI disavowed something. But unless it's clear and unambiguous, HHI could not have done that, and they did not do that. So it is a critical point, because you're talking millimeters in order for, if that lower rim is measured at the lower edge of the midsole, it's different than if it's measured at the lower edge of the outsole, which is attached to that midsole. Especially in the Costco case, because their outsole is rounded. Now, the interesting thing about that is if that argument was accepted, it would basically say, if you had an outsole that was rounded, you might have a shoe that infringes, or you might not. Or if you have a shoe that has an outsole that's square, after wearing it for a few hundred miles of running, or whatever activity, you're going to round the edges, and then all of a sudden the shoe doesn't infringe. And I think it's critical that the lower rim is measured at the outer portions of the midsole. And I guess that's the distinction, is that we're reading a limitation into the patent that doesn't exist if we don't say that the outsole is at the lower edges of the midsole. Any other questions on that? OK. I will move on to the other argument that I have with regards to the midsole construction. I think the court erred in the construction of the midsole concerning the midspan. The court stated that the midspan is a specific structure. And in this case, the midspan is not a specific structure. And again, if we go to the language of the specifications, what it says is, let me define the midspan. The midspan is from the lower edge, again, that's where the upper sits on the midsole of the shoe. And then it would be at the heel cup of the shoe. So you have this area which was not unsupported prior to this invention. Before, what you had was an upper of a shoe sitting on a pyramid-shaped midsole, and there was nothing that supported around it. We are saying that the midspan can be literally any area between the lower edge, where that upper sits on the midsole, and up to the middle of the heel cup. It doesn't have to be a specific point. Did Mr. Watley testify to this, to something here in a manner that is somewhat damaging to you? Saying that the midspan is the point at which the top of the support band merges with the sidewall of the heel cup? Yeah, Mr. Watley testified that it merged, but he said that it merged at a point where the support band was still lateral, so we had wall means being lateral. And where that comes into an issue in this case is that you had superfluous material that went higher than you actually needed for the midspan. Now, it's always been our position that the 895 patent, the midspan, was not a specific area. Even Mr. Hawkinson, the inventor in the prosecution history, stated that it was not a specific area. But for the sake of this argument, I think it is somewhat moot in the sense that Mr. Watley said, as soon as you have the lower rim, the measurement code in the lower rim, and it's beyond the lower edge, and you have that angle, you have the invention. And even if it's attached to the single spot, you will still have the invention of the 895 patent. There was some differentiation there, but I don't think that that was a critical differentiation or area that's going to affect our position. The other thing that I'd like to say with regards to the midspan is that if you're taking the ordinary definition, there's not one in the dictionary for midspan. I've looked all over, but if you take the words and you look at mid, it's midpoint, and span is area. And if you read the language in the specifications, what you have is column 3 begins with line 19, where the support band extends upwardly and merges along line 40 with the vertical midspan. If it's going to merge, it's not going to be a specific point. I analogize that to a freeway. It doesn't actually have a specific spot when you're merging onto the road. You don't jump on, you merge on. And then the exact next sentence is talking about how the support band also extends up and merges along line 42 with the side of the upper, which is above, and it goes on. But again, it's using the exact same language, merging. And so what I think there is that the specifications are clearly defining what the midspan is. It's a point that merges. But if you look at column 3, lines 18 through 23, you've got this pretty clear indication that the midspan is a structure, and it gives the location of that structure. Right? Well, it's a structure, but I think it's an area. I think the structure is the wall where the support band is going up to the midspan. What does the figure 6 show here? Where's the midspan? Well, figure 6 shows that there's a point on the midspan on line 40 is what you're saying. Is that what you're looking at? Yes, that's what I'm looking at. Okay, figure 6 shows line 40, but I'm saying that anywhere between basically where you see 38 up to 40 is that midspan area. Now, the picture shows line 40, but that's not the only embodiment. I didn't show that with some kind of more encompassing illustration in your figure 6 here. You pointed to a specific place and said that's it. Well, it's saying that, but I don't think you can look at the picture, the figure in and of itself. I think you have to look at it with the flames and with the specifications. I'm looking at the specification. We just looked at the place we were talking about. The support band extends upwardly to merge along the line 40, as it says in column 3, with the vertical midspan of the heel cuff and also extends upwardly to merge along line 42. I think that's a critical point because if you look at line 42, you see there's no way it could be a specific spot. This is line 42 here. All this is midspan, and it is going to merge through here with the upper. I think the argument you're making is on point in the sense that it's not a specific spot per se. It's pretty specific. It's pointing to exactly that point of merger. Where that point is may vary with the angle of the shoe there, but it's a pretty specific point, right? I'll concede that it's a specific point on the drawing, but I think that if you use merge and you look at the specifications of the language, merge does not stand for a specific point. If we merge it onto a freeway, we're not jumping onto a specific point. We're gradually getting to there. I think once you get above the lower edge and then you go up to the middle of the heel cuff, that area is the merge spot. This drawing shows that this is one of the embodiments, but this is not the only place where that midspan could be. Can I reserve the rest of my time if I'm running really short? Yes. Thank you. I will address the same issues if I may. With respect to the lower rim, we have a couple of claim limitations here that really drive what the lower rim means. There are two. One says that the lower rim has to be wider than the heel cuff midspan. But the fifth limitation, which was added in the re-examination, specifically couches the width of the lower rim in terms of the ability of the sole of the shoe to provide stability. In this case, the distinction that was made with respect to Fukuoka could scarcely have been clearer. I can't imagine a plainer case of disavowal than the submission of a drawing with lines extending downward saying, measure it here when you have a curved lower rim because outward of that provides no stability. That's the word that's used in the fifth claim limitation, the fifth one down that's in italics that was added in re-examination. That's the one that that drawing was submitted to talk about the argument here. And wider than that has no stability. So if the lower rim is to be measured wider than that, they say it would be an error. And in the Costco's case, the outsole is curved, the sole, and the word in that limitation is sole. That's the word that he uses in terms of stability. Wider than that provides no stability. You can't measure wider than that. There are also other arguments or other issues within the specification as well that support it. Throughout it, it says stability is key. In the specification with respect to the lower rim, there's utterly nothing. It simply points generally to the bottom of the shoe. It doesn't have lines drawn and measurement locations and dimensional measurements. There's nothing in the specification to guide us. Within the claim itself, in terms of clear disavowal, we have the word sole used a number of times. We have midsole. We have lots of different language. It makes it very unclear exactly what this terminology is getting at. We know that lower rim is a coined term. It's their brief acknowledges that these words, lower rim, midspan, long, they're all coined terms. And so in order to, they say you need a clear disavowal, but clear disavowal is a departure from ordinary and customary meaning. We don't have that here. So instead what we have is definitional language in the prosecution history that says, in this case when it's curved, measure it inward where it's flat and actually touches the ground. And then we also have both sides, the experts from both sides saying the same thing. And Mr. Watley in particular is saying in a hypothetical, if it curves upward, you measure it where it first peels up from the horizontal. Now the exhibit that Mr. Watley was shown in conjunction with that hypothetical was the Fukuoka illustration, that very one from the Fukuoka patent, figure 12. And he said, assuming that's where it is, you place a straight edge on the bottom, and where it peels up, that's where you measure the lower rim, where it first peels up from the horizontal. The issue with Fukuoka that HHI takes is that it doesn't have a midsole and a separate outsole. And yet Fukuoka describes its construction in exactly the same kind of language that the claim says. Fukuoka says it has a foamy inner layer and a hard outer layer. Well, the claim says that it has to have a resilient midsole and a more durable outsole. That's the identical thing. It doesn't use the precise exact words, but in any kind of situation where you're looking at prior art, people are going to use different words. They mean utterly the same thing. So the application of Fukuoka can scarcely have been more appropriate. Departure in the definitional language in the file history was exactly spot on. If the sole is rounded, measure it where it stops being flat and first peels up. Midsole is similar here, or rather vertical midspan. That was a coined term as well. If we were to look at it definitionally, the evidence that we submitted in the Markman hearing says that it should be in the middle of the span, halfway between the bottom and top of the span along the heel cup. We submitted evidence that is consistent with the file history that shows line 40 as being right in the middle, between the top and the bottom of the span. The language about merging in, which is used in the specification, even if you talk about hypotheticals and analogies about merging into a free-wing studge, you still have to get there. You still have to merge all the way in. So if you look at figure 6, for instance, in the patent, it shows that it kind of tapers in and gets thinner and thinner as it gets there. But it does get all the way to line 40, halfway between the bottom and the top of the midspan. Mr. Watley specifically said the top. That was his work. He specifically admitted having testified that the vertical midspan had been measured at the top of that EVA material on the shoe, the top of the support band. So all of the testimony, the specification, all of it points to the same thing. There is utterly not one word in the specification, in the file history, that suggests that it can be the range along the span, save one. The only thing that you will find is the submission during the reexamination of a deposition transcript from the inventor that was taken in litigation after the patent originally issued, but at some point during the reexamination, in which at that point in time he says it could be anywhere along the span. Of course, there is nothing in the patent that suggests that. The only thing you have is the line, line 40. Now, counsel suggests that line 42 is different. You see in figure 5, line 40 extends horizontally and line 42 tapers down. But the operative language is the vertical midspan of the heel cup. Line 40 is along that location. Line 42 is extending farther forward, and the other claims, 2 and 3, deal with that line 42. There's no debate about what the vertical midspan of the heel cup should be. It's right at line 40, halfway between the bottom and the top. And in fact, if there is any error here, it's because the court didn't go far enough, and to hold that this claim literally means it must extend upward halfway, fully between the top and the bottom of the heel cup. He allowed it to simply be the top of the support band wherever it ends. That was sufficient in the language. The evidence at trial would have yielded the same result either way in this case, but the court probably should have gone farther and said vertical midspan is halfway between the span, top and bottom of the heel cup. One last point, if I may, on the midspan. Mr. Watley did offer testimony, as counsel points out, that he said something along the lines of, you still have the invention there. As long as you've got some supporting material, you've still got the invention. And I suppose we wouldn't disagree that as long as you have any material in that so-called unsupported gap of the prior arch shoe, that you would have some additional support that would function better and reduce flexing and so on. But if that were the case, the claim would say something like a shoe with some support material in there, or a support band. It's a very long claim. It has all kinds of rigorous dimensional requirements beyond simply adding some support material. And so it's fine for the shoe to be functioning that way, but in order to infringe a patent, it requires a whole lot more. And so we would discount what Mr. Watley says on those grounds. I would address one last point, if I may, in terms of the broadening of this claim in reexamination. This claim originally had in the last limitation a wall, or a support band, rather, that had to incline upwardly. It was amended thereafter to say that the midsole and support band have to form a wall means, which inclines upwardly. This court previously dealt with that issue in the Converse decision, and at that point in time was focused on the aspect of whether the support band, after the amendment, had to start from the lower rim all the way to the bottom, and concluded that it didn't. But in looking at the conceptual issue that Converse set forth, concluded that when Converse amended the support band so that it no longer started at the lower rim, it destroyed the pyramid-shaped midsole. And therefore, those two limitations, the support band and the pyramid-shaped midsole, were somehow inherently interrelated, such that the only way you could adjust the support band so that it didn't start at the lower rim would be a way that destroys the pyramid shape. But the hypothetical shoes that we have presented show that that's not the case, that it is quite possible to construct a shoe that keeps the exact pyramid shape and all of the other limitations of the claim. But as a support band that does not start at the lower rim, it might start anywhere all the way down to an infinitely small, barely perceptible distance above the lower rim. Is this argument about the invalidity of the patent after the re-examination offered as an alternative ground for affirmance? I mean, I'm not clear, what are you asking us to do to declare that the patent is invalid now? Yes, Your Honor, that was... Did the district court pass on this question? The district court did in the form of denying a summary judgment motion presented by Costco. Did you raise in the summary judgment motion the argument that the patent had been impermissibly broadened at the re-examination stage? Yes, Your Honor. As you pointed out, we dealt with this in converse, didn't we? Yes, Your Honor, the court did deal with this. And you just say, well, we weren't a party, we're not collaterally a stock, we want to come back and take issue with the sentence where the court talked about not conceiving of hypotheticals. You've got a couple of hypotheticals that you think will do the trick. And I would hope that I wouldn't waste the court's time simply trying to take another crack at it with the same old shoe, Your Honor, and I think that converse missed it. The court certainly wasn't motivated to look for it as Costco or a defendant in our shoes would be. And I think that the shoe has no issue. The hypothetical shoes that we presented have literally everything that the amended claim requires but would not have infringed the original claim. We don't need to reach this if you went on the rest, right? That would be correct, Your Honor. If it pleases the court, I will yield the floor and save the last remaining time for the motion. Okay, thank you, Mr. Gray. Let's see. Well, first with regards to the Congress case, I'm going to just touch that really quick. At that point in time, this court said that the wall means had to incline from the lower rim. His examples still do not do that. I think the court looked at that fairly closely at that time and they said they could conceive of no other idea  and I don't think there is any other way of doing this. And what has been shown in their brief, the wall means is not coming from the lower rim up to the mid-span. It is not doing that. With regards to the merging thing, column 2, line 14, it says merging with the mid-span. It doesn't say merging to, it says merging with. So I'm still going to push on that argument that it's not a specific point and it's going to merge with something. Column 2, line? Line 14, Patton. Mm-hmm. I'm seeing it saying, said band is inevitably merging with the vertical mid-span of the heel cut for supporting and stabilizing. And again, that seems to be fairly clear as to it's not a specific point. And as I argued a little bit earlier, I think that if you look at column 3, where it's using that same exact language, merging along line 40, and if you look at the next line where it's talking about 42, it says 42 merging along the line. I think Texas Digital stands on point. It states that you should look at a pattern in the specification to determine the ordinary meaning of the words. And I think there's a pattern there. It's saying that it's merging. It's not a specific spot. And it looks like I'm out of time. It looks as if you're out of time. You can rely on your brief with respect to the validity issue. Thank you. In which case, Mr. Graham, there's nothing for a rebuttal. No, unless you have questions. Okay, thank you both. The case is taken under submission.